## Tennis Coal Co. v. Napier, et al.

(Decided March 14, 1911.)

### Appeal from Perry Circuit Court.

1. Land Patents—Mistake in Copy.—When two official copies of a patent are filed, and it is evident there is a mistake in one of them as to the date of the survey, the court will look to the survey to see what is the true date.

2. Settlement—Outside the Lap.—Where a settlement is made without the lap, no adverse possession is gained as to land within the senior patent.

3. Adverse Possession—Agreement of Parties.—When a part of a senior patent is enclosed under an agreement with the patentee to hold as his tenant, the occupant is not in adverse possession, though he may so hold for years.

P. T. WHEELER, HAGER & STEWART and J. MORGAN CHINN for appellant.

BAILEY P. WOOTEN, JESSE MORGAN and GREENE, VAN-WINKLE & SCHOOLFIELD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

On June 9, 1850, Nicholas Combs, Jr., obtained a patent from the Commonwealth for 600 acres of land in Perry county.  His heirs conveyed the land to John S. Combs, who conveyed it to the Tennis Coal Company. The Tennis Coal Company brought this suit against Jesse Napier, John Combs, James Walker and certain persons claiming under them charging that the defendants had entered on their land and cut certain trees of

the value of $500. The defendants filed an answer in which they denied the plaintiff's title to the land and set out the land which they claimed. The Nicholas Combs survey conflicted with an older survey made to William Grigsby on January 27, 1848; but neither John S. Combs nor the Tennis Coal Company had ever claimed the land below the Grigsby line. The defendants held under the Grigsby patent, and they set up claim to a narrow strip of land lying along the Grigsby line but above it and within the Nicholas Combs survey. It also appeared in the action that there was a 100 acre survey patented to Kendrick Combs under whom the defendants claim. This patent lay entirely within the Nicholas Combs 600 acre survey. On the hearing of the case, the circuit court adjudged the coal company to be the owner of all the land it claimed outside of the Kendrick Combs 100 acre survey, and adjudged the defendants to be the owner of that survey. The coal company appeals.

The defendants had pleaded and attempted to show that they were the owners by adverse possession of the long narrow strip of land which they claimed next to the Grigsby line, but the court only adjudged to them so much of this strip as lay within the Kendrick Combs 100 acre survey, and he adjudged to them the whole of this survey although they had in their pleadings claimed less than one-third of it. Both the parties excepted to the judgment of the circuit court, and both were granted an appeal. But the appeal before us is prosecuted only by the coal company, and the defendants have not prosecuted their appeal or taken a cross appeal.

It is manifest from the pleadings that the judgment of the circuit court can only be sustained upon the ground that the plaintiff had failed to show title to the 100 acres of land embraced within the Kendrick Combs 100 acre survey, and that the circuit court took this view because he held that patent superior to the Nicholas Combs 600 acre survey which covered the same land. The defendants filed in the action a copy of the Kendrick Combs patent which recited that it was issued upon a survey made November 22, 1849. If this was correct, the Kendrick Combs survey would be older than the Nicholas Combs survey made on June 9, 1850. But the plaintiffs filed a certified copy of the Kendrick Combs patent which showed that it was issued on a survey made November 22, 1859, and they also filed a copy

of the original survey on which the patent was issued, which showed the same fact. The circuit court in deciding the case overlooked, it would seem, the corrected copy of this patent; for we cannot see any other ground on which the judgment could have been based. An office copy of the patent is prima facie correct, but in copying instruments mistakes will sometimes be made by those making the copy. So we have here two official copies of the patent, one showing the date of the survey in 1849, and the other in 1859. One or the other is wrong, and which is correct is conclusively shown by the copy of the original survey itself, as to which there is no dispute. The parol evidence in the case also shows the same facts. We, therefore, conclude that the Kendrick Combs survey is younger than the Nicholas Combs survey and is inferior to it.

We concur with the circuit court in the conclusion that the evidence does not show an adverse possession by the defendants or those under whom they claimed for fifteen years. The defendants had all entered on the land in the last five or six years before the suit was brought. Their claim to adverse possession rests on an alleged holding by those under whom they claimed. But these parties all lived on the William Grigsby survey. They did not live on any part of the land within the lap of the Kendrick Combs survey and the Nicholas Combs survey. A person living and holding outside of the lap of two patents acquires no right within the lap as to the senior patentee. There is in the record proof that some of the land in controversy has been fenced for twenty years, but the great weight of the evidence shows that Pud Napier, under whom the defendants claim, expressly agreed with Combs that he did not claim above the Grigsby line, and that the fence was run as it was simply for his convenience, and at his request, he agreeing to hold the land as a tenant for Combs. The proof that Napier recognized the Grigsby line and that he did not claim beyond this line is clear and convincing.

Judgment reversed and cause remanded to the circuit court, with directions to enter a judgment in favor of the plaintiff as above indicated.